IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

KEVIN DWIGHT CARTER,        )
                                        )
        Plaintiff,          )
                                        )
        v.               )     CIVIL ACTION NO. 1:12-cv-69-CSC
                                        )           (WO)
CAROLYN W. COLVIN,          )
Acting Commissioner of Social Security,  )
                                        )
        Defendant.      )

## MEMORANDUM OPINION

### I. Introduction

On June 6, 2008, the plaintiff, Kevin Dwight Carter, filed a Title II application for a period of disability and disability benefits. (R. 122). Carter also filed a Title XVI application for supplemental security income on June 6, 2008. (R. 131). In both applications, Carter alleged a disability beginning on April 20, 2008. (R. 129). After the claims were initially denied, Carter requested and, on November 2, 2009, received a hearing before an administrative law judge ("ALJ"). (R. 30). Following the hearing, ALJ Renee Blackmon Hagler denied the claim on November 13, 2009. (R. 26). On November 29, 2011, the Appeals Council rejected a subsequent request for review. (R. 5). The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Pursuant

to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United

States Magistrate Judge.  Based on the court's review of the record in this case and the briefs

of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination[2] the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the claimant presently unemployed?
> (2)  Is the claimant's impairment severe?
> (3)  Does the claimant's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the claimant unable to perform his or her former occupation?
> (5)  Is the claimant unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of "not
> disabled."

---

[2]A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); 42 U.S.C. § 405(g).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.**  Carter was born on February 1, 1972, and was 37 years old at the time of the administrative hearing in this case.  (R. 34).  Carter has a high school diploma. (R. 35).

---

[3]*McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  *See Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990). Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Sullivan*, 493 U.S. at 525 n.3; *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

In 1990, Carter was involved in an automobile accident.  (R. 216). He sustained multiple injuries, including a lumbar compression fracture that required extensive surgery. (R. 216-218). In April 2008, he injured his back again when he was bucked from a horse. (R. 203-04, 293).  In July, 2009, he attempted suicide by swallowing antifreeze and was subsequently treated for major depressive disorder.  (R. 266-71; 295). In addition, he has a past history of alcohol dependence and cannabis abuse.  (R. 295).  He alleges that he has been disabled since April 20, 2008.  (R. 129).

For the two years preceding his horse-riding accident in April 2008, Carter worked as a welder.  (R. 35-36).  His prior employment history (including the period after his 1990 lumbar compression fracture and surgery) also includes construction, sheet rock and drywall installation, plumbing, maintenance, and assembly work.  (R. 47).

**B.    The Findings of the ALJ**

The ALJ found that Carter has the following severe impairments: "history of comminuted burst fracture L4, status post L4 laminectomy with posterior decompression and fusion L3 to L5 and Major Depressive Disorder, single episode." (R. 16).  Crediting Carter's hearing testimony that he was not drinking or using drugs, the ALJ also found that Carter's past history of alcohol and drug abuse was not a severe impairment.  (R. 16).

The ALJ concluded that Carter did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 17).  The ALJ determined that Carter had the residual

4

functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift 40 pounds occasionally, sit/stand/walk six of eight hours; he must alter position at two hour intervals; and he should avoid repetitive lifting, bending and twisting. Further, given the claimant's moderate difficulties with concentration, persistence or pace, he is limited [to] performing simple, repetitive, one and two step tasks as required in carry out unskilled work.

(R. 18).

The ALJ found that Carter did not have the residual functional capacity to perform his past relevant work (R. 24), but that Carter was able to perform other available jobs within the range of light work.  (R. 25).  Therefore, the ALJ concluded that Carter was not disabled. (R. 25).

**C.  Carter's Claims.**

Carter presents two issues for review:

1.    Carter contends that the ALJ erred in concluding that he is not disabled because he allegedly has an impairment or combination of impairments that meets the listing for spinal arachnoiditis, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04.

2.    Carter contends that the ALJ failed to properly consider or credit his subjective testimony about the extent of his back pain.

### IV.  Discussion

**A.    The ALJ Did Not Commit Reversible Error By Failing to Set Forth A Detailed Analysis of the Listing Requirements for Spinal Arachnoiditis at Step Three of the Sequential Evaluation Process**

The ALJ expressly concluded that Carter "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in

5

20 CFR Part 404, Subpart P, Appendix 1." (R. 17).  The ALJ's opinion contains no analysis specific to the listing for spinal arachnoiditis at step three of the sequential evaluation process.  Carter argues that the lack of a detailed analysis of the ALJ's reasoning with respect to the listing for spinal arachnoiditis constitutes reversible error.  However, an ALJ does not need to "mechanically recite the evidence" leading to the determination that the claimant's impairments do not meet the listing criteria.  *Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).  The ALJ's listing determination need not be explicitly stated, but may be found implicitly in the ALJ's decision if the ALJ proceeds to the fourth and fifth steps of the disability analysis.  *Cf. id*. (*"*There may be an implied finding that a claimant does not meet a listing. We thus consider it clear that the ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments.").

The social security regulations define "spinal arachnoiditis" as "a condition characterized by adhesive thickening of the arachnoid which may cause intermittent ill-defined burning pain and sensory dysesthesia, and may cause neurogenic bladder or bowel incontinence when the cauda equina is involved."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(K)(1).  "Individuals with arachnoiditis, particularly when it involves the lumbosacral spine, are generally unable to sustain any given position or posture for more than a short period of time due to pain."  *Id*. at § 1.00(K)(2)(b).  To meet the listing for spinal arachnoiditis, an individual must suffer from spinal arachnoiditis that (1) has been

"confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging;" (2) "result[s] in limitations because of distortion of the bony and ligamentous architecture of the spine and associated impingement on nerve roots (including the cauda equina) or spinal cord;" and (3) is "manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." *Id.* at § 1.04(B).

Medical records from 1994 include the results of a lumbar myelogram that "most likely" indicated "some arachnoiditis." (R. 193). More recently, the results of a lumbar myelogram performed in 2008 "raise[d] the question of some mild arachnoiditis" (R. 228-229), and Carter's treating physician, Dr. Maddox, concluded that the results of the 2008 lumbar myelogram "may indicate some arachnoiditis." (R. 228-229). Assuming, without deciding, that these findings are sufficient to "confirm" of a diagnosis of arachnoiditis, the objective medical evidence substantially supports the ALJ's implicit conclusion, as reflected in her expressly articulated analysis at step four and five of the sequential evaluation process, that Carter's condition is not "manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours." 20 C.F.R. Part 404, Subpart P, Appendix 1, at § 1.04(B).

At the hearing before the ALJ, Carter testified that, due to his medically documented severe impairment of a surgically-repaired spinal fracture and lumbar fusion, he experiences back pain so severe that, on an average day, he can stand no more than one hour without

changing position, sit no more than thirty minutes without changing position, and lift no more than forty pounds.  (R. 41-42).  He testified that, on a scale of one to ten, with ten being the worst, his pain rates an eight on an average day.  (R. 46).

The ALJ acknowledged that Carter was not "a healthy individual," and the ALJ "d[id] not totally discount the fact that [Carter] may occasionally experience some degree of pain or discomfort."  (R. 23). However, the ALJ found that Carter had the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift 40 pounds occasionally, sit/stand/walk six of eight hours; he must alter position at two hour intervals; and he should avoid repetitive lifting, bending and twisting. Further, given the claimant's moderate difficulties with concentration, persistence or pace, he is limited [to] performing simple, repetitive, one and two step tasks as required in carry out unskilled work.

(R. 18).

Thus, although the ALJ partially credited Carter's subjective testimony about the limiting effects of his pain, the ALJ discounted Carter's testimony that he needed to change position at less than two hour intervals when sitting or standing.  "[S]ubjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the claimant complains is sufficient to sustain a finding of disability." *Walker v. Bowen*, 826 F.2d 996, 1003–04 (11th Cir. 1987).  Where there exists objective medical evidence of an impairment which could reasonably be expected to produce the claimant's symptoms, the ALJ must consider the claimant's subjective testimony and, if the ALJ rejects that testimony, the ALJ must articulate explicit and

8

adequate reasons" for doing so.  *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995

In discounting Carter's testimony that pain required him to change positions more than once every two hours, the ALJ relied on the contents of the medical record, including physical findings, medical test results, and the opinion of Dr. Maddox.  Despite multiple medical tests and physical examinations, Dr. Maddox consistently did not find any medical "rhyme or reason" (R. 256) to account for the full extent and nature of Carter's subjective complaints of pain.

In February 1994, Dr. Maddox treated Carter and noted:

Kevin is now almost 4 years out from his burst fracture which was treated with pedicle screw and plate fixation eggshell procedure intertransverse fusion . He looks quite solid today. He is not really having any back symptoms, despite the rather high profile system utilized in his case.  He has normal neurologic exam in terms of reflexes, strength and sensation but he has some intermittent numbness in his legs, not constant. No particular radiculopathic signs are noted. It is certainly possible he could have some persistent impingement in this retropulsed fragment injury.

. . . .This patient has been working as welder but is just not holding up to it very well.  He probably should not be in a heavy manual labor type job.  I certainly would like to see him employed but perhaps a lighter duty status would be better for him.  Retraining is certainly something that should be considered in this young otherwise healthy patient.

(R. 191).

On April 22, 2008, after Carter was injured when he was bucked from a horse, Dr.

9

Maddox treated Carter for complaints that "[he] is hurting badly but was having significant symptoms even before with back pain and numbness in his legs, a tendency of his legs to give way at times." (R. 242).  However, "a [medical] report of the individual's allegation [of pain,] *e.g.*, 'He says his leg is weak, numb,'" does not qualify as medical evidence of a listed musculoskeletal impairment.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(D); *see also Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) (holding that the claimant bears the burden "specific medical findings that meet the various tests listed under the description of the applicable impairment").  Acceptable medical evidence of a listed impairment consists of objective medical observations and the results of medically acceptable procedures; a claimant's subjectively-reported symptoms do not constitute acceptable medical evidence, even if a doctor or other medical professional recorded those subjective complaints in the medical record.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00(D); *Bell*, 796 F.2d at 1353.

Dr. Maddox's medical investigation of Carter's alleged symptoms consistently fail to support the conclusion that Carter's back injury was causing "severe burning or painful dysthesia" or any other medically equivalent neurological deficit that could reasonably result in the need to change position or posture more than once every 2 hours.  20 C.F.R. Part 404, Subpart P, Appendix 1, at § 1.04(B). When treating Carter for complaints of pain and numbness in his legs in April 2008, Dr. Maddox conducted physical examinations and ordered diagnostic testing that led him to suspect the presence of, at most, "some" "mild"

10

arachnoiditis at the site of the lumbar fusion.  (R. 228-229).  However, Dr. Maddox "d[id

not] see any complications related to" the fusion. (R. 241).  Dr. Maddox noted that Carter had

"some mild stenosis[4] that may be accounting for *some* of [Carter's] symptoms." (R. 241

(emphasis added)).  Dr. Maddox "did not find actual deficits on examination. [Carter] had

good antigravity lift to the legs, good tolerance of hip, ROM, strength is preserved in lower

extremities although he was quite antalgic.  He has had some intermittent loss of feeling in

the bottom of his feet [but] no bladder or bowel disturbance."  (R. 241).  In June 2008, Dr.

Maddox again examined Carter and opined that the "exam looked good within the constraints

of [the] fusion. [Carter] had good ROM, no objective spasm today."  (R. 240).

On July 23, 2008, after Carter's application was denied at the initial level, (R. 243-50),

Carter again sought treatment from Dr. Maddox.  Dr. Maddox noted:

> Kevin is in today complaining of some unusual complaints. His back exam
> was negative and straight leg raising was normal. ***His reflexes and strength
> are normal in the lower extremity and he indicated that sometimes he has
> varying sensation in the lower extremities. He doesn't really have any rhyme
> or reason to this.*** He did have severe injury many years ago involving his
> lumbar spine. Again, ***found no myelopathic or radiculopathic features on his
> exam today.*** He did describe sleeplessness and feeling that he is "under a lot
> of stress at home." I did notice that he has pinpoint pupils and a bit of a wide
> eyed look. I asked him about other medications that he might be taking. He
> told me he was on Mobic, Flexeril and Ultram only. He stated that he is having
> problems with urologic problems and I have referred him to Dr. Mark Byard

---

[4]Carter does not argue that he has an impairment that meets or equals the listing for lumbar spinal
stenosis.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.00(K)(3) & § 1.04(C) (listing for lumbar spinal
stenosis).  In any event, the record does not support the conclusion that he meets that listing, which includes
the requirement that the claimant's stenosis "result[] in inability to ambulate effectively, as defined in [§]
1.00B2b."  Further, the stenosis noted by Dr. Maddox was subsequently treated with an epidural and
medications, after which Carter was "much better." (R. 240).

for his assessment.[5] He does not appear to be having any dysfunction referable to hypesthesia or bowel or bladder disturbance.

I am going to look at a drug screen. He has asked for sleeping medication. I will prescribe him a week to ten days of a sleep medicine as long as the drug screen is negative. This will not be refillable.

(R. 256) (emphasis added).

Further, when Carter "asked [Dr. Maddox] about disability," in May 2008 following the horse-riding accident, Dr. Maddox responded: "[Carter] has basically worked for eighteen years with this fusion that was secondary to a fracture with an automobile accident back in 1990. I told him his back is not going to be able to handle the rigors of heavy manual labor whether or not he has the surgery and that he is developing some degenerative levels above and below the fusion." (R. 241). In June, 2008, Carter asked Dr. Maddox for an opinion on his specific functional limitations, and Dr. Maddox responded: "We could get a FCE to really determine this but I would say this particular patient with the back problems we have delineated should be limited to a maximum occasional lift of 40 pounds. This would not be repetitive bending, twisting and lifting. Even with surgery, I would leave those restrictions basically at that level." (R. 240). Dr. Maddox's opinions about Carter's work restrictions are not those of a medical professional whose objective observations and diagnostic findings indicated spinal arachnoiditis or any equivalent impairment "manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once

---

[5][Carter's referral to a urologist yielded a diagnosis of premature ejaculation; neither Dr. Maddox nor the urologist ascribed this condition to Carter's back impairment. (R. 256; 259-263).]

every 2 hours." 20 C.F.R. Part 404, Subpart P, Appendix 1, at § 1.04(B).

Dr. Maddox's medical opinion, and the objective medical evidence and results of medical testing documented in the record, constitutes substantial evidence for the ALJ's conclusion that "the medical evidence of record does not reasonably support a finding that [Carter's] complaints of pain and discomfort are so intense and chronic that work activity at all exertional levels would be precluded." (R. 23). Because substantial evidence supports the ALJ's credibility determination regarding Carter's testimony about the need to change position more than once every two hours, the record substantially supports the ALJ's conclusion that Carter's impairment failed to meet the listing for spinal arachnoiditis. *See Hutchison*, 787 F.2d at 1463-64 (holding that the medical record supported the ALJ's implicit finding that listed impairment had not been met); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); .

**B.    The ALJ did not Commit Reversible Error By Finding Carter's Subjective Complaints of Pain Only Partially Credible In Light of His "Overall Lack of Persistent and Regular Treatment"**

In addition to relying on the medical record in determining that Carter's subjective complaints of pain were not credible, the ALJ also "specifically acknowledge[d] [Carter's] overall lack of persistent or regular treatment."  (R. 23).  The ALJ stated: "It is reasonable to assume that if the claimant were experiencing physical and/or mental difficulties to a

disabling degree, he would have presented to his physicians for ongoing treatment." (R. 24).

Carter argues that he cannot afford medical treatment and, therefore, the ALJ should not have relied on infrequent treatment as part of the basis for finding that he was not disabled. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (holding that "'refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability,' and 'poverty excuses noncompliance'" (quoting *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988)). Carter testified that he did not seek more treatment from Dr. Maddox because he was uninsured and financially unable to afford additional medical care. ( R. 39-40). The record does contain evidence that Carter is unemployed and in debt. (R. 132-33, 295, 303).

"[W]hen an ALJ relies on noncompliance as the *sole* ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." *Ellison*, 355 F.3d at 1275. In this case, however, Carter's "lack of persistent and regular treatment" was *not* the sole (or even primary) basis for the ALJ's disability determination. As explained in Part IV.A. of this opinion, the ALJ *did* partially credit Carter's subjective testimony, but did not credit his testimony that his pain was so severe that he had to change position more than once every two hours. Also as explained in Part IV.A., in discounting Carter's subjective testimony, the ALJ's conclusion in this regard is supported by substantial evidence in the medical record. Because the ALJ did not base her credibility finding solely or primarily on infrequency of

medical treatment, and because the ALJ's credibility determination was substantially supported by the medical evidence of record, the ALJ's reliance on Carter's failure to seek further medical care does not constitute reversible error.  *See Ellison*, 355 F.3d at 1275 (holding that "failure to consider the claimant's ability to afford his . . . medication does not constitute reversible error" where the ALJ's finding of noncompliance was not the primary or exclusive grounds for the ALJ's decision); *see also Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the harmless error rule prevented reversal of an ALJ's decision).

**C.**    **The ALJ Did Not Commit Reversible Error By Finding Carter's Subjective Complaints of Pain Only Partially Credible In Light of His "Ability to Engage in A Wide Variety of Activities of Daily Living"**

In addition to the medical record, the ALJ also relied on Carter's testimony of his daily activities in partially discrediting Carter's subjective testimony about the extent and limiting effects of his pain.  Specifically, the ALJ wrote:

> The undersigned acknowledges that the claimant testified that he lives in a two-story house with his bedroom on the second floor; he can read, write and do simple math; he can make change and handle money; he takes Mobic and Ultram, but he is out of his medication now because he has no insurance; he takes no over-the-counter medications; he takes 40 mg of Celexa and 100 mg of Trazadone for depression; his medication helps him with his depression; he can walk; he can stand maybe an hour; he has problems sitting and can sit for 20 to 30 minutes on an average day; he is limited to 40 pounds lifting; he can grocery shop alone; he can climb stairs very slowly; he can bend, stoop and squat; he can use his hands; he can prepare simple meals; he can bathe and dress [him]self; he can take care of [him]self because he is very independent; he has to do a little activity to keep from getting stiff; he can wash his clothes; he cannot iron, sweep, or vacuum; he makes his own bed; he goes to church on Wednesdays and Sundays; when he gets up, he makes coffee and walks

15

outside and sits in the swing and drinks his coffee; he checks his pepper plants; he goes up stairs and lies down and watches television; he can socialize with friends; he likes to grill out and fish occasionally; he can cook outside once or twice a week; he has no problems in crowds. The undersigned concludes that the claimant's ability to engage in a wide array of activities of daily living is persuasive evidence that the claimant's alleged symptoms resulting from physical and/or mental impairments are not totally disabling.

(R. 22).

Carter asserts that the ALJ erred at the fourth and fifth steps of the sequential evaluation by considering his daily activities as one of several factors in discrediting his testimony about the functional effects of his pain.  In support of this argument, Carter cites the Eleventh Circuit's decision in *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir.1997). There, the Eleventh Circuit found that the ALJ improperly discredited the opinion of a treating physician without good cause by relying on the results of a six minute exercise test and on the claimant's "admission . . . that he participates in certain activities, such as housework and fishing." *Id*. at 1441.  The Eleventh Circuit rejected the notion that "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability." *Id.* at 1441.

Carter's reliance on *Lewis* is misplaced.  Although participation in everyday activities of short duration does not *per se* disqualify a claimant from disability in all cases, "[t]he regulations do not . . . prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process." *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). Rather, Social Security regulations expressly provide that daily activities *should* be

16

considered in evaluating credibility. *See* 20 C.F.R. § 404.1529(c)(3)(i) (listing "daily activities" among the factors the Social Security Administration will consider in evaluating the limiting effects of a claimant's pain).

Here, ALJ found that Carter's "alleged pain and resultant limitations seem unreasonable when considering the medical record *and* the claimant's testimony." (R. 23 (emphasis added)). Thus, the ALJ did not rely solely on Carter's daily activities to determine his disability status. Rather, in accordance with the regulations, the ALJ considered "the entirety of the record" (R. 24), including the objective medical evidence, the statements of Carter's treating physician, and Carter's own testimony about the effects of pain on his daily living. *See, e.g.,* 20 CFR § 416.929 (a) ("We will consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about *how the symptoms affect your activities of daily living* and your ability to work." (emphasis added)); 20 C.F.R. § 404.1529(c)(3) ("Since symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information [in addition to objective medical evidence] you may submit about your symptoms. The information that you, your treating or nontreating source, or other persons provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and *how the symptoms may affect your pattern of daily living*) *is also an important indicator of the intensity and persistence of your*

*symptoms*." (emphasis added)).

Therefore, the ALJ did not err as a matter of law in evaluating Carter's subjective pain testimony in light of his daily living activities alongside the other evidence presented, including objective medical evidence and statements of his treating physician.  Further, Carter's testimony regarding his daily living acitivites, as well as the medical record, provide substantial evidence for the ALJ's disability determination.  *See Macia*, 829 F.2d at 1011-12 (holding that substantial evidence, including evidence of the claimant's daily activities, supported the ALJ's decision that the claimaint was not disabled despite the existence of pain); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) ("The Commissioner's factual findings are conclusive if supported by substantial evidence."); *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

## V. Conclusion

For the reasons as stated, the court concludes that the decision of the Commissioner denying benefits to Carter should be affirmed.  *See  Landry v. Heckler*, 782 F.2d 1551, 1551-52 (11th Cir. 1986) ("Because the factual findings made by the [ALJ] . . . are supported by substantial evidence in the record and because these findings do not entitle [the claimant] to disability benefits under the appropriate legal standard, we affirm.").

18

The Court will enter a separate final judgment.

Done this 29th day of May, 2013.


                                              /s/Charles S. Coody
                                         CHARLES S. COODY
                                         UNITED STATES MAGISTRATE JUDGE